## ROEBUCK *v.* CALHOUN.

No. 15610. OCTOBER 11, 1946.

*J. T. Sisk,* for plaintiff. *Joseph B. McGinty,* for defendant.

HEAD, Justice. (After stating the foregoing facts.) "While the judge, upon a hearing of a writ of habeas corpus for the detention of a child, is vested with a discretion in determining to whom its custody shall be given, such discretion should be governed by the rules of law, and be exercised in favor of the party having the legal right, unless the evidence shows that the interest and welfare

of the child justify the judge in awarding its custody to another." *Sloan* v. *Jones,* 130 *Ga.* 836 (62 S. E. 21). In the present case the moral fitness of the contending parties was not made an issue in the case either by the pleadings or the evidence, and it appears that both parties are suitable persons to have the custody and control of the minor child. It was therefore the duty of the trial court to award the child to the party having the legal right.

Since the mother of the child was dead, the prima facie right of custody was in the father, the defendant in error in this case. *Chapin* v. *Cummings,* 191 *Ga.* 408 (12 S. E. 2d, 312). Counsel for the plaintiff in error, the maternal aunt, states that the petition for habeas corpus was brought under the provisions of the Code, § 74-108 (3), that parental power shall be lost on "failure of the father to provide necessaries for his child, or his abandonment of his family." Counsel insists that the father of the minor child whose custody is sought has forfeited his parental rights by his failure to furnish necessaries for his child, and by the abandonment of his family.

In *Brown* v. *Newsome,* 192 *Ga.* 43 (14 S. E. 2d, 470), it was held: "Under the Code, § 74-108 (3), the right to parental control and custody may be lost by the father by failure to provide necessaries for his child. However, in order to sustain a contention that the father has lost his right to custody by reason of failure to provide necessaries, a clear and strong case must be made. *Miller* v. *Wallace,* 76 *Ga.* 479 (2 Am. St. R. 48); *Sloan* v. *Jones,* 130 *Ga.* 836 (62 S. E. 21)." In that case the father allowed the child's grandparents to retain and care for him for almost two years before instituting the proceedings to obtain custody. During such time he visited the child but contributed nothing to his support, except occasional gifts of clothing, although the father was gainfully employed. It did not appear that the grandparents had made any demand that the father contribute to the support of the child, but they willingly cared for him, hoping to obtain his permanent custody. In that case the court held that the evidence was not sufficient to demand a finding that the father had lost his prima facie right to custody by failure to provide necessaries, and the judgment awarding custody to him was affirmed.

In the present case it appears that Willie Ben Calhoun, the father of the minor child, was in the U. S. Army until August 17,

1944, and that up to that time he had made an allotment to his child and the child's mother. The mother of the child was ill from the time of his birth, and died July 16, 1945, in New York City. The father took his child from the home of Emma Roebuck, the maternal aunt, on July 8, 1946. From the record it appears that the father's Army discharge was from the Baxter General Hospital, and was signed by a medical officer. The record is silent as to the physical condition of the father on his discharge from the Army, or whether he was able to obtain immediate employment. Emma Roebuck testified: That immediately after her sister's funeral the father asked her for the child and she refused to let him have the child; that on the same date, and immediately before, the father took the child away from her home, she had talked with the father at the post office in Elberton, and he had said that he wanted to do something about the support of the child, and she had told him that she did not want any support for the child from him, that she had had the entire custody and control of the child almost from his birth, and ever since the death of his mother in 1945, and that she intended to keep it. The father testified: That on several occasions he had attempted to do something for the child in the way of providing necessaries, and Emma Roebuck had refused to allow him to do so, and told him that if the child needed anything she would look after that herself; and that since his discharge from the Army he had asked her to give him his child many times, which she had failed and refused to do.

We think that the evidence justified the finding that the father did not abandon his child; that while he was in the Army the child was cared for by the mother's sister, since the mother was in bad health; that on the death of the mother the father attempted to obtain possession of the child, but the maternal aunt refused to allow him to have such possession; that the aunt not only did not demand that he support the child, but, on the contrary, discouraged and restrained any attempts he made to provide for him. Under all the circumstances of the case, we think that the father had not lost his parental power by failing to provide necessaries for his child and abandoning his family, as contended by the plaintiff in error, and that the judgment awarding the custody of the child to the father was proper. See *Broxton* v. *Fairfax,* 149 *Ga.*

122, 124 (99 S. E. 292); *Bond* v. *Norwood,* 195 *Ga.* 383 (24 S. E. 2d, 289); *Hill* v. *Rivers,* 200 *Ga.* 354 (37 S. E. 2d, 386).

*Judgment affirmed. All the Justices concur.*